UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 03-10350-RCL |
| | ) | |
| HABEEB ADEOLA AZEEZ | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On April 27, 2005, Habeeb Adeola Azeez pled guilty to the charge against him in this matter. Azeez admitted that on or about October 18, 2003 he unlawfully imported heroin, a Schedule I controlled substance, into the United States from Germany. See Presentence Report ("PSR") at ¶8.

There is no plea agreement between Azeez and the government. Azeez reserved the right at the Rule 11 hearing to seek departures based upon mitigating role for his alleged minor participation in the offense and based upon his age and physical impairment.

The PSR in this case was issued on July 8, 2005. In it, the United States Probation Office concluded that Azeez has no prior criminal history. PSR ¶43. The PSR also determined that Azeez was responsible only for the heroin that he carried at the time that he was arrested at Logan International Airport. PSR ¶32.

The PSR concluded that the total offense level was 23 with a guideline imprisonment range of 46 to 57 months.  PSR ¶¶40, 78.

Azeez's Sentencing Memorandum seeks departures under U.S.S.G. § 3B1.2(b) on the grounds that he played a minor role in the offense.  The U.S. Probation Office awarded such a departure.  PSR ¶34.  Azeez also disputes the probation department's determination that he is not entitled to a further departure under the U.S.S.G. §§ 5H1.1, 5H1.4 and under the sentencing factors delineated in 18 U.S.C. § 3553.  The government contends that the guideline imprisonment range should be 57-71 months.  The government therefore addresses the availability of departures under U.S.S.G. § 3B1.2(b) and the defendant's contention a departure is warranted based upon his age and physical impairment.

**I.   AZEEZ'S REQUEST FOR A MITIGATING ROLE DEPARTURE UNDER § 3B1.2(b) SHOULD BE DENIED**

Under the Sentencing Guidelines, a decrease of two points in the defendant's offense level is authorized if he was a minor participant in criminal activity.  The defendant bears the burden of proving that he is entitled to a downward adjustment based upon his role in the offense.  United States v. Gonzalez-Soberal, 109 F.3d 64, 73 (1st Cir. 1997); United States v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992).  The mere fact that Azeez was a drug courier does not automatically entitle him to any type of

mitigating role adjustment. <u>United States v. Paz Uribe</u>, 891 F.2d 396, 399 (1st Cir. 1989)("even if the court found that Paz was only a courier, he would not automatically be entitled to a reduction"). <u>See also</u> <u>United States v. Lopez-Gil</u>, 965 F.2d 1124, 1131 (1st Cir. 1992)(same); <u>United States v. Gonsalez-Soberal</u>, 109 F.3d 64, 73 (1st Cir. 1997)(drug courier seeking role adjustment bears the burden of proof). Role requests by couriers require examination of factors such as "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." <u>Id</u>.; <u>see also</u> U.S.S.G. § 3B1.2, comment (background)(role adjustment determinations are "heavily dependent on" the particular facts).

The relevant First Circuit decisions reflect these general principles. For example, the court has repeatedly affirmed sentences where district courts refused to give any mitigating role adjustment to a courier involved in a single drug transaction. <u>See</u> <u>United States v. Cepeda</u>, 907 F.2d 11, 12 (1st Cir. 1990) (affirming district court's refusal to give any mitigating role adjustment where defendant served as courier for one 15 gram heroin deal by delivering heroin and collecting payment); <u>United States v. Torres</u>, 960 F.2d 226, 229 (1st Cir. 1992)(affirming district court's refusal to give any mitigating

role adjustment to defendant who collected money for drug transaction, received bag from drug courier, and handed bag containing drugs to undercover agent). Similarly, the court has found two-level adjustments to be appropriate for defendants who played a supportive role in a single drug transaction. See United States v. DiMarzo, 80 F.3d 656, 661-662 (1st Cir.) (rejecting claim that defendant who drove to scene of single drug transaction to act as a lookout was entitled to three or four-level adjustment under U.S.S.G. § 3B1.2); United States v. De La Cruz, 996 F.2d 1307, 1314-1315 (1st Cir.) (rejecting claim that defendant who drove a van in a caravan seeking to carry 240 kilograms of cocaine was entitled to more than a two-level decrease under U.S.S.G. § 3B1.2); United States v. Rodriquez Cortes, 949 F.2d 532, 546-547 (1st Cir. 1991)(rejecting claim that defendant who attempted to collect installment payment on 26 kilograms of cocaine was entitled to more than a two-level decrease under U.S.S.G. § 3B1.2).

Couriers play important roles in importation cases involving large amounts of heroin, such as the amount in this case, 1,379.4 grams. E.g., United States v. Garcia, 920 F.2d 153, 155 (2nd Cir. 1990)("Couriers are indispensable to the smuggling and delivery of drugs and their proceeds"). Large scale importation matters are particularly inappropriate cases to even consider minimal role adjustments. The job of the courier in such

transactions is more important than in virtually any other type of case. It is the courier who may perform the most important function and without whom the crime simply would not occur. It is the courier who has possession of the drugs for substantial periods of time without supervision or control of any kind. Unlike other trafficking cases, international couriers put more effort into their crimes simply by the degree of planning required and are therefore far more culpable. The large amount of drugs involved here weighs against departure. E.g., United States v. Lui, 941 F.2d 844, 849 (9th Cir.1991)("[W]e have recognized that possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction"); United States v. Mena-Robles, 4 F.3d 1026, 1038 (1st Cir. 1993)(affirming refusal to give minimal role adjustment where defendant guarded money and "amount of drugs involved was quite large").

Application of these principles compels the conclusion that no departure under section 3B1.2(b) is available to Azeez. Azeez argues that this is an unusual case because he is less culpable than anyone else involved in the crime of importing heroin. The defendant fails to take into account the numerous other likely participants that performed supportive tasks like arranging for transportation, acting as lookout and collecting payment.

The facts here are simply insufficient to justify a

5

departure.  Azeez carried a substantial amount of heroin into this country, later admitting that he was due to receive $6,000 for his efforts.  This conduct does not merit a departure for minor role in the offense.

**II.  AZEEZ'S REQUEST FOR A AGE AND PHYSICAL IMPAIRMENT DEPARTURE UNDER § 5H1.1 AND 5H1.4 SHOULD BE DENIED**

The defendant claims that his age, 65 years old, makes him eligible for returning to his home country of Nigeria without further incarceration.  Moreover, Azeez contends that his ailing back cannot be properly treated at the prison facilities of the Federal Bureau of Prisons ("BOP").  Instead, he would opt for homeopathic treatment, tea baths, in his home country.  Therefore, he reasons that he deserves of a downward departure.  According to the Sentencing Guidelines, however, age and physical condition are discouraged factors for departures.  U.S.S.G. § 5H1.4 ("Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range"; age is "not ordinarily relevant in determining whether a sentence should be outside of the applicable guideline range..."); U.S.S.G. § 5H1.1; see also United States v. Rivera, 994 F.2d 942, 948 (1st Cir. 1993).  Such departures are only permissible when physical problems are "present in unusual kind or degree." Id.  In order for a defendant's physical condition to be relevant to a possible

6

adjusted sentence, a defendant must demonstrate "an extraordinary physical impairment." U.S.S.G. § 5H1.4.

The defendant's medical condition does not constitute an "extraordinary physical impairment". Azeez has not demonstrated that the BOP has been, or will be unable to continue an appropriate level of care. Moreover, Azeez has not shown that incarceration that will endanger him or shorten his life. Instead, Azeez only establishes that his medical condition may be appropriately dealt with through surgery while incarcerated.

The First Circuit has consistently refused to grant departures absent a showing that the prison system is unable to treat a prisoner's medical problems or that a defendant's life would be threatened by incarceration. See United States v. LeBlanc, 24 F.3d 340 (1st Cir. 1994)(defendant's heart disease, which could be largely controlled with medication, ongoing medical care and regular check-ups as administered in prison, was not found to be "extraordinary physical impairment"); United States v. Hilton, 946 F.2d 955 (1st Cir. 1991)(physical disorder that could be accommodated by prison facilities was not an "extraordinary physical impairment"). These cases demonstrate that the departure requested by Azeez should fail. See also United States v. Winters, 105 F. 3d 200, 208 (5th Cir. 1997) (remanding departure given to defendant whose medical problems required no particular type of treatment; court noted that

offender who suffered from cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency was not entitled to a downward departure); United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987)("poor health, in and of itself, should not automatically shield a convicted felon from his just desserts").

An example of an "exceptional" physical condition is found in the case of United States v. Baron, where the defendant was a 76-year-old man with a cardiac condition and suspected prostate cancer, which made him susceptible to life-threatening situations from exposure to ordinary germs. 914 F.Supp. 660 (D.Mass. 1995). Azeez's case does not approach such an "extraordinary" level of compromised physical condition. First, while Azeez's condition is limiting, it is not severe, let alone life-threatening. The defendant has lived a relatively active life despite his very recently diagnosed degenerative disease. His activity prior to his arrest included "hustling" at a casino to pay his own gambling debt. See PSR ¶61. Azeez's criminal activity that led to his arrest included carrying two large suitcases through Logan International Airport and repeatedly lifting them on and off the inspection table in the presence of the Customs inspectors. PSR ¶¶15, 18.

Second, there is no medical evidence in the record to indicate that Azeez cannot withstand the rigors of incarceration,

8

other than a passing mention that Azeez has trouble climbing. PSR ¶66. To the contrary, Azeez concedes that he has been imprisoned doing "hard time" at the Plymouth County Correctional Facility for twenty one months since his arrest. Sentencing Memorandum of Habeeb Azeez at p. 5. The PSR also indicates that even Azeez's own physician, Dr. Margaret Seton could not adequately forecast the advancement of Azeez's condition without a bone scan. This procedure has not been performed to date.

Azeez has not established that he deserves a departure based upon his age, or his physical condition as neither are extraordinary in nature.

### III. AZEEZ'S IS NOT ENTITLED TO A SENTENCE REDUCTION BASED UPON THE SENTENCING FACTORS IN §3553

Azeez raises a variety of claims that he contends are considerations justifying a reduced sentence under the sentencing factors delineated in 18 U.S.C. § 3553. His claims center upon two additional points. First, specific deterrence of any future criminal conduct by him is met by the length of his pretrial incarceration, twenty one months, and so no additional incarceration is necessary. Second, general deterrence is met because Azeez has been incarcerated and will be deported following the completion of his term of imprisonment.[1] These

---

[1] The defendant's alien status is irrelevant to the courts consideration of the proper sentence that he should

claims lack merit.

The PSR indicates that Azeez is a gambler. PSR ¶61. It also indicates that Azeez was driven to the desire to make a large amount of money, $6,000, by financial need. Id. There is no evidence that Azeez will not again return to risking apprehension in order to meet gambling debts, or family needs. A more lengthy term of imprisonment will serve to raise the risk to Azeez and deter his criminal conduct. See 18 U.S.C. §§ 3553(a)(2)(A), and (B).

Likewise, general deterrence of similarly situated persons is not satisfied by no additional imprisonment for Azeez. General deterrence is an important consideration in assessing an appropriate sentence. See 18 U.S.C. § 3553(a)(2)(B). The most effective method of protecting this country from other financially motivated persons in Nigeria, and elsewhere, from risking apprehension and importing large quantities of drugs is to punish those caught severely. The message of general deterrence will resonate with couriers and other supportive members the organization if the price of apprehension is high. Here, simply stated, twenty one months for being arrested with

---

receive for the crime that he committed. See United States v. Maldonado, 242 F.3d 1, 4-5 (1st Cir. 2001)(vacating and remanding sentence in which judge departed downward on basis of defendant's alien status; whatever the rationale for the departure, defendant's status as deportable alien insufficient to remove case from heartland so as to warrant departure).

1,379.4 grams of heroin is not sufficient to prevent future criminal conduct.

**III.  CONCLUSION**

    Azeez is not entitled to the departures that he seeks.  His requests should be denied and he should be sentenced within the applicable guideline range in this case.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                    United States Attorney

By:

                                      <u>S/ Glenn A. MacKinlay</u>
                                      GLENN A. MACKINLAY
                                      Assistant U.S. Attorney
                                      One Courthouse Way
                                      Boston, MA 02110
                                      (617)748-3215

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing document by efiling and by emailing it to counsel for Habeeb Adeola Azeez, Page Kelley, Esq.

S/ Glenn A. MacKinlay
GLENN A. MACKINLAY
